# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

RONTRAVIOUS PORTER,

       Plaintiff,

    v.

SGT. RONNIE SHUMAKE; CO II
DOTTSON; CO II SAPP; and CO II
CAMBELL,

       Defendants.

CIVIL ACTION NO.: 6:15-cv-113

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff is currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia. He filed this cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement at GSP. After the requisite frivolity review, the Court ordered that Plaintiff's Complaint be served on Defendant Ronnie Shumake, a sergeant at GSP, and Defendants Dottson, Sapp, and Cambell, all correctional officers at GSP. (Doc. 9.) To date, only Defendants Shumake and Sapp have been served with Plaintiff's Complaint.[1] These Defendants filed a Motion to Dismiss based on Plaintiff's failure to exhaust his available administrative remedies, failure to state a claim, and qualified immunity. (Doc. 13.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss. The Court should **DISMISS** all claims based on Defendants' alleged deliberate indifference to Plaintiff's health and safety because Plaintiff failed to exhaust

---

[1] Given that only Shumake and Sapp have been served, in this Order, the Court refers to these two Defendants collectively as "Defendants."

his administrative remedies as to those claims. The Court should also **DISMISS WITHOUT PREJUDICE** Plaintiff's claims for compensatory and punitive damages.

Further, the Court should **DISMISS** Plaintiff's putative claims arising under the Fourteenth Amendment and his claims for violation of his rights to due process. As Defendants point out, though Plaintiff references these theories in his Complaint, he does not offer any factual allegations supporting those theories. (Doc. 13-1, p. 2 n.1.) Moreover, Plaintiff does not oppose Defendants' request that the Court dismiss any potential Fourteenth Amendment or due process claims.

However, the Court should **DENY** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims against Defendant Shumake for excessive force and against Defendant Sapp for failure to intervene. Plaintiff should be allowed to pursue nominal damages and injunctive relief as to those claims.

## BACKGROUND[2]

Plaintiff filed this cause of action on September 21, 2015, due to events which occurred almost two years earlier. (Doc. 1.) Plaintiff alleges that, on October 28, 2013, Defendants Shumake, Sapp, Dottson, and Cambell approached Plaintiff's cell. (Doc. 1, p. 5.) Defendant Shumake gave Plaintiff orders while Defendants Sapp, Dottson, and Cambell stood at the door. Id. Defendants Dottson and Cambell both had cameras to record an "extraction" of Plaintiff from his cell. Id. Plaintiff complied with all of Defendant Shumake's orders and stripped naked, bent over, and spread his buttocks. Id. Then, as Plaintiff stood back up, Defendants Dottson and Cambell pointed their cameras to the ground. (Id. at pp. 5–6.) Defendant Shumake then reached through the tray flap in Plaintiff's cell and sprayed Plaintiff with pepper spray. (Id. at p. 6.)

---

[2] The Court takes the following facts from Plaintiff's Complaint and assumes them to be true, as it must at this stage.

Shumake sprayed Plaintiff's face, groin area, and buttocks without any provocation.  Id.  Plaintiff complied with all of the officers' commands before being sprayed with the pepper spray.  Id.  The officers then left Plaintiff in the cell filled with pepper spray for eight minutes, causing Plaintiff to hyperventilate and causing burning in his lungs and chest.  Id.  Plaintiff's skin burned for at least twenty-four hours.  Id.

On January 13, 2016, I issued a Report and Recommendation after conducting the requisite frivolity review of Plaintiff's Complaint.  (Doc. 9.)  I recommended that the Court dismiss Plaintiff's claims against Defendants in their official capacities.  (Id. at p. 4.)  However, I concluded that the Complaint stated plausible claims against Defendant Shumake for violation of Plaintiff's Eighth Amendment right to be free from excessive force.  (Id. at pp. 4–5.)  I also concluded that Plaintiff's Complaint stated a claim for failure to intervene against Defendants Sapp, Dottson, and Cambell, and for deliberate indifference to Plaintiff's health and safety against all Defendants.  (Id. at pp. 5–7.)  On February 17, 2016, the Court adopted the Report and Recommendation.  (Doc. 10.)

After service of the Complaint, Defendants filed the instant Motion to Dismiss, arguing that Plaintiff failed to exhaust his available administrative remedies before bringing this action.  (Doc. 13-1, pp. 3–5.)  Defendants also argue that Plaintiff has failed to state a claim upon which relief can be granted as to each of his legal theories, that Plaintiff cannot recover compensatory or punitive damages, and that Defendants are entitled to qualified immunity.  (Id. at pp. 6–13.)  Defendants support their Motion with a Brief, several exhibits, and a Reply Brief.  (Docs. 13, 25.)  Plaintiff filed a Response opposing all grounds of Defendants' Motion as to his Eighth Amendment claims.  (Doc. 23.)

**DISCUSSION**

I.     **Dismissal of Plaintiff's Deliberate Indifference Claims for Plaintiff's Failure to Exhaust his Available Administrative Remedies as to those Claims**

A.     **Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's

facts as true.  Id.  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

### B.    Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court.  See Porter v. Nussle, 534 U.S. 516, 524 (2002).  Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."   In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory.  Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").  Additionally, the Supreme Court recently "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'  And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account."  Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. <u>Johnson</u>, 418 F.3d at 1157–59; <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." <u>Smith v. Terry</u>, 491 F. App'x 81, 83 (11th Cir. 2012).

**C.    The Georgia Department of Corrections' Grievance Procedure**

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 13-3.) This SOP does not require an inmate to attempt to informally resolve his complaint before filing a formal grievance. (<u>Id.</u> at p. 5.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." <u>Id.</u> Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. (<u>Id.</u> at p. 4.) An inmate must submit a grievance form "no later than 10 <u>calendar</u> days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (<u>Id.</u> at p. 8 (emphasis in original).) A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday." (<u>Id.</u> at p. 2.) The inmate must use the prison's Grievance Form when filing the original grievance, and he must sign the Grievance Form and give it to any counselor. (<u>Id.</u> at pp. 7–8.) The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator. (<u>Id.</u> at p. 8.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at pp. 10–11.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 12.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

Pertinent to this case, when an inmate files a grievance involving physical force not in compliance with Department policies, that grievance is automatically referred to the Internal Investigations Unit. (Id. at pp. 12–13.) That referral is the final action that will be taken on the grievance, and it ends the grievance process. Id. A prisoner cannot administratively appeal the Warden's referral of a grievance to the Internal Investigations Unit. In other words, a prisoner cannot, and thus, need not, do anything further to exhaust his administrative remedies once his grievance is referred to the Internal Investigations Unit.

D.    Assessment of Plaintiff's Exhaustion

Defendants argue that the Court should "dismiss the Complaint on the ground that Plaintiff failed to exhaust his administrative remedies." (Doc. 13-1, p. 3 (emphasis supplied).) However, Defendants then only argue that Plaintiff failed to exhaust his administrative remedies as to his deliberate indifference claims. (Id. at pp. 3–5.) To the extent that Defendants argue that Plaintiff's failure to exhaust his administrative remedies as to his deliberate indifference claims

should result the in the dismissal of his other exhausted claims, the Court must reject that argument. Almost a decade ago, the United States Supreme Court rejected the approach of dismissing an entire action because any one claim is not properly exhausted. Jones, 549 U.S. at 220–24 (overturning Sixth Circuit's application of "total exhaustion" rule and requiring dismissal only of those "unexhausted claims", not "entire action."). Consequently, as Defendants only direct their exhaustion arguments at Plaintiff's deliberate indifference claims, the Court will only assess whether those claims should be dismissed for failure to exhaust.[3]

### 1. Plaintiff's Grievances

Plaintiff filed fifty grievances from March 2, 2009, to August 31, 2015. (Doc. 13-4.) He filed two grievances complaining about the events of October 28, 2013. (Docs. 13-5, 13-6.) Plaintiff filed the first of those grievances, Grievance No. 160997, on November 6, 2013. (Doc. 13-6.) The grievance form directed Plaintiff to "include specific information concerning your grievance to include dates, names of persons involved, and witnesses." Id. at p. 3. In response, Plaintiff provided the following description of the incident:

> On October 28, 2013, after being ordered by Sgt. Shoemake to strip off step back from the door and bend over and [illegible] cough which I complied, while bending over at the waist Sgt Shoemake sprayed me in my buttock & groin area as Ofc. Dottson COII & Ofc. Cambell COI film the so called routine cell extraction. As I cuffed up & was threaten and humiliated as ever on camera violating my 14th and 8th Amendment cruel and unusual punishment.

Id. In the section labeled "Resolution Requested", Plaintiff asked that the camera be reviewed "as it will show Sgt. Shoemake abuse [sic] his rank." Id. Plaintiff also requested that Cambell, Sapp, and Dottson be used as witnesses to the event because they would have heard Defendant

---

[3] Defendants do not argue that Plaintiff failed to exhaust his administrative remedies as to his claims of excessive force or his claims of failure to intervene. GSP Grievance Coordinator Jacquelyn Ayeni avers in her affidavit that, though Plaintiff lists Sapp as a witness in his grievances, Plaintiff "does not complain about any conduct he attributes to officer Sapp." (Doc. 13-2, p. 7.) However, because Defendants do not make any independent exhaustion argument as to Sapp in their supporting brief, the Court will not address the issue *sua sponte*.

Shumake give Plaintiff the order to strip and step back.  Id.  Additionally, he asked that Shumake

be removed from the K-Building and that he be demoted from the rank of Sergeant.

Plaintiff filed his second grievance regarding the incident, Grievance No. 161129, on the

same date as Grievance No. 160997 and used the same form.  (Doc. 13-5.)  In his second

grievance, Plaintiff reiterated essentially the same complaints made in his first grievance.

Specifically, Plaintiff provided the following description of the incident:

> On October 28, 2013, after being order by Sgt. Shoemake to strip off and step
> back from the tray flap and bend over at the waist in which I complied.  While
> bending over I was sprayed all in the groin and buttock with pepper spray.  As
> Officer Dottson and Cambell filmed the so called routine cell extraction.  As I
> cuffed up I was then threatened and humiliated as ever.  And the camera was
> turned on but fact that there isn't a speaker to hear him order me to strip off and
> step back from the flap twice in which I complied. As result my 14th and 8th
> Amendment was violated. Cruel and unusual punishment.

Id. at p. 3.  Plaintiff also reiterated the requested resolutions from his first grievance.  Id.

> 2. Whether Plaintiff's Grievances Exhausted his Deliberate Indifference
>    Claims

Defendants argue that Plaintiff's grievances do not include the facts underlying his

deliberate indifference claims.  (Doc. 13-1, p. 5.)  Specifically, they point out that his grievances

do not mention any decisions or actions following Shumake's use of force against Plaintiff.  In

Jones v. Bock, the Supreme Court addressed the level of specificity required of a prisoner to

exhaust his administrative remedies.  549 U.S. at 217–18.  The Court stated, "[t]he level of detail

necessary in a grievance to comply with the grievance procedures will vary from system to

system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the

boundaries of proper exhaustion."  Jones, 549 U.S. at 218.  Following Jones, courts in the

Eleventh Circuit have required prisoners to strictly comply with the level of specificity contained

in the prison's grievance procedures.

For instance, in <u>Maldonado v. Unnamed Defendant</u>, No. 15-10867, 2016 WL 1637981, at *11 (11th Cir. Apr. 26, 2016), the prisoner plaintiff stated in his grievance that he "got beat & punish [sic] for a remote control that came apart & for not cleaning up." The court upheld the dismissal of the claim because the prisoner had failed to comply with the prison's directive to include in the grievance a "detailed description of the incident, including the date and time of the occurrence, and the officers or inmates involved." Similarly, this Court dismissed a prisoner plaintiff's claims based on his failure to exhaust when, though he filed numerous grievances, those grievances did not mention specifics regarding the denial of his medical care or explain how the named defendants contributed to that denial. <u>Ezzard v. Ajibade</u>, No. CV 314-141, 2015 WL 5838496, at *6–7 (S.D. Ga. Oct. 5, 2015), *report and recommendation adopted*, No. CV 314-141, 2015 WL 6872522 (S.D. Ga. Nov. 9, 2015); <u>see also</u> <u>Toenninges v. Georgia Dep't of Corr.</u>, 600 F. App'x 645, 649 (11th Cir. 2015) (upholding dismissal for failure to exhaust because plaintiff's "medical grievance contained issues different from those contained in his deliberate indifference claim" and "the substantive discrepancy between his [medical] grievance and his deliberate indifference claim casts doubt on the fact that the prison was on notice of his claims against [defendant]."); <u>Hamze v. Steele</u>, 509 F. App'x 897, ___ (11th Cir. 2013) (affirming dismissal for failure to exhaust because "grievance complained only of being 'placed with other inmates . . . in violation of [his] protective custody' and did not mention an assault or being incarcerated with a particular inmate."); <u>Logue v. Chatham Cty. Det. Ctr.</u>, 152 F. App'x 781, 783 (11th Cir. 2005) (finding prisoner who sued alleging violations of rights to equal protection and access to the courts based on jail officials' refusal to copy documents did not exhaust equal protection claim when he filed a grievance about non-compliance with copying policy but did not mention race); <u>Ferris v. Jones</u>, No. 4:14CV454-RH/GRJ, 2015 WL 4668297,

at *4 (N.D. Fla. Aug. 5, 2015) ("Plaintiff did not mention the conditions of his confinement or his alleged loss of general prison privileges in either of the above-mentioned grievances. Therefore, these claims are not exhausted."). Even where a prison's grievance policy simply requires that prisoners provide a description or narrative of the incident, courts require the prisoner's account to include the facts underlying his claim. <u>Wright v. Langford</u>, 562 F. App'x 769, 776 (11th Cir. 2014) (upholding dismissal because, among other things, plaintiff's grievance did not including information that defendant handcuffed him too tightly or jerked him up on the handcuffs, and prison's grievance process requires inmates to "'fully state the time, date, names of . . . staff and inmates involved, names of witnesses, and a narrative of the incident.'").

In this case, SOP IIB05-0001 required Plaintiff to use GSP's grievance form to grieve his complaints against Defendants. In turn, GSP's grievance form required Plaintiff to "include specific information concerning your grievance to include dates, names of persons involved, and witnesses." (Docs. 13-5, 13-6.) Plaintiff complied with this directive as to Defendant Shumake's use of force against him. <u>Id.</u> He described the circumstances leading up to the use of force, as well as Defendant Shumake's spraying him with pepper spray. <u>Id.</u> However, Plaintiff did not provide any information (much less specific information) regarding events which occurred after Shumake's use of force. <u>Id.</u> Plaintiff did not mention that he was left in the cell for an extended period of time after Shumake sprayed him with pepper spray. <u>Id.</u> He also did not mention that he did not receive any medical care after being sprayed. <u>Id.</u> Consequently, Plaintiff's grievances did not give GSP officials an opportunity to address Plaintiff's deliberate indifference complaints in the prison setting before Plaintiff resorted to litigation.

Plaintiff implicitly concedes that he did not provide specific information regarding claims arising after the use of force. However, he contends that he should be excused from doing so because the grievance procedure "does not give any specific level of detail that is required." (Doc. 23-1, p. 2.) However, the grievance form (which the SOP mandated Plaintiff to use) required Plaintiff to provide "specific information" concerning his grievance, and Plaintiff failed to provide any information as to any claims arising after Shumake sprayed him with pepper spray. Plaintiff also contends he exhausted his remedies by requesting that prison officials review the video of the incident. However, GSP's grievance procedure does not excuse prisoners from providing information regarding their grievance by asking officials to review video or to talk with witnesses. Such an exception would contort the grievance process and require prison officials to decipher what the prisoner's areas of complaint may be and seek out facts supporting a prisoner's grievance. In contrast, the grievance procedure actually in place at GSP required Plaintiff to affirmatively provide that information.

Thus, even accepting Plaintiff's version of facts as true, under the first Turner step, he failed to exhaust GSP's administrative remedies regarding any claims based on events occurring after Shumake sprayed him with pepper spray. Specifically, Plaintiff did not grieve his deliberate indifference claims of being left in his cell for several minutes and not receiving proper medical care after the use of force.

> 2. Whether GSP's Administrative Remedies Were Unavailable to Plaintiff at the Time He Filed Suit

Construing Plaintiff's arguments liberally, he contends that, even if he failed to exhaust GSP's administrative remedies, those remedies were not available to him. Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him. ___ U.S. ___ 2016 WL

3128839, at *7 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id., ___ U.S. ___, 2016 WL 3128839, at *8 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id., ___ U.S. ___, 2016 WL 3128839, at *7.

Plaintiff contends that he could not exhaust his administrative remedies because he did not have access to the current version of the prison's grievance policy, SOP IIB05-0001. (Doc. 23-1, pp. 2–4.) Plaintiff first contends that lack of access to the current version of SOP IIB05-0001 prevented him from knowing what level of specificity the SOP required. (Id. at p. 3.) However, the level of specificity is not contained in the SOP. Rather, as the above discussion details, the grievance form itself directs Plaintiff to "include specific information concerning your grievance to include dates, names of persons involved, and witnesses."

(Docs. 13-5, 13-6.)  Plaintiff was obviously aware of this directive, as he filled out two grievance forms.  Id.

Next, Plaintiff argues that because he did not have a copy of the SOP, he did not know that he could use an extra sheet of paper to describe the incident.  (Doc. 23-1, p. 3.)  However, Plaintiff did not use all of the space afforded to him on the grievance forms that he filled out.  (Docs. 13-5, 13-6.)  Moreover, though Plaintiff filled out two grievances, he did not include different claims (such as instances arising after the use of force) in his second grievance but instead chose to make the exact same complaints.  Thus, lack of access to SOP IIB05-0001 did not prevent Plaintiff from grieving facts regarding his deliberate indifference claims.

Additionally, Plaintiff argues that lack of access to the SOP prevented him from knowing that all excessive force grievances are forwarded to the Internal Investigations Unit.  (Doc. 23-1, p. 3.)  Plaintiff also argues that he was told that the referral to Internal Investigations was not appealable.  Id.  Plaintiff appears to misapprehend Defendants' exhaustion arguments.  Defendants have not argued that Plaintiff failed to exhaust because he did not appeal the denial of a grievance or because he otherwise did not fully pursue one of his grievances.  Rather, Defendants contend that Plaintiff did not grieve the facts underlying his deliberate indifference claims.  Thus, whether the grievance would be referred to the Internal Investigations Unit or reviewed through GSP's standard two-step process has no bearing on Defendants' exhaustion arguments.

In sum, under the first Turner step, Plaintiff does not establish that GSP officers were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the GSP grievance process was so complicated that it was "essentially unknowable," or that GSP officers "thwart[ed] inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation." <u>Ross</u>, ___ U.S. ___, 2016 WL 3128839, at *8. Thus, even if the hurdles to exhaustion existed as Plaintiff claims, they did not rise to the height of unavailability that the Supreme Court contemplated in <u>Ross</u>.

Plaintiff's claims of unavailability wither even more readily when subjected to the crucible of examination the second <u>Turner</u> step requires. Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. <u>Turner</u>, 541 F.3d 1083. Having reviewed all of Plaintiff's and Defendants' filings, the Court finds Defendants' account of the availability of administrative remedies more credible than Plaintiff's.

In support of their Motion to Dismiss, Defendants offer the affidavit of GSP Grievance Coordinator Jacquelyn Ayeni. (Doc. 13-2.) Ayeni states that, upon admission to GSP, all prisoners receive an oral explanation of the grievance process and an outline of the grievance process. (<u>Id.</u> at p. 3.) She further testifies that all inmates may review the entire grievance SOP, which is located in the prison's law library. <u>Id.</u> This account, which the Court finds to be more credible than Plaintiff's account, contradicts Plaintiff's arguments that he could not access a current version of the grievance SOP and that he was unaware of the level of specificity required in a grievance.

Moreover, Plaintiff's grievance history belies any contention that prison officials thwarted his attempts to file grievances or otherwise made the grievance process unavailable to him. (Doc. 13-4.) Plaintiff filed fifty grievances between March 2, 2009, and August 31, 2015. <u>Id.</u> Pertinently, the grievance procedure at issue, SOP IIB05-0001, has been in effect since December 10, 2012. (Doc. 13-3, p. 1); <u>see also</u> <u>Velez v. Chatman</u>, No. CV614-074, 2015 WL 649128, at *4 (S.D. Ga. Feb. 13, 2015) ("This SOP was amended with an effective date of

December 10, 2012."). Between that effective date and November 6, 2013, the date that Plaintiff filed the grievances underlying this lawsuit, Plaintiff filed nine grievances. (Doc. 13-4, p. 2.) The issues he raised in those grievances included lack of medical care, missing property, conditions of confinement, cell assignment, and recreation time. Id. Further, Plaintiff had one grievance fully granted, and he pursued another through an appeal. Id. Given Plaintiff's grievance history and Ayeni's affidavit, Plaintiff's argument that he was somehow ignorant of GSP's grievance procedure does not hold water. Wright, 562 F. App'x at 776 ("[I]t was reasonable for the district court to find that [plaintiff's] purported ignorance of the five-day grievance filing period was not credible, given [plaintiff's] significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each [county] inmate is given a copy of the Inmate Handbook spelling out the grievance procedure.")

In sum, Plaintiff filed this lawsuit without ever alerting prison officials to the facts underlying his deliberate indifference claims. An inmate must do more to resolve his dispute within the literal walls, or at least the figurative walls, of the prison system before seeking relief in the halls of the courthouse. Consequently, the Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's deliberate indifference claims against all Defendants **without prejudice**. Specifically, the Court should dismiss any claims arising out of facts occurring after Defendant Shumake's use of force, including Plaintiff's claims that Defendants left him in his cell and failed to provide him adequate medical care after Shumake sprayed him with pepper spray.[4]

---

[4] This is not to say that Plaintiff should be barred from introducing any evidence regarding events occurring after the use of force. Such events could be relevant to his use of force or failure to intervene claims. For example, one of the factors the Court considers when assessing the subjective component of the use of force claim is whether the officers took actions to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012).

## II.    Whether Plaintiff States Plausible Claims for Relief Against Defendants

### A.    Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

### B.    Whether Plaintiff States an Excessive Force Claim Against Defendant Shumake

Plaintiff's excessive use of force claim and Defendants' Motion require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That proscription governs the amount of force that prison officials are entitled to use against inmates. Campbell v.

Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).

In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "Because the Eighth Amendment 'draws its meaning from the evolving standards of decency that mark the progress of a maturing society,' the objective harm inquiry is contextual in that it is responsive to contemporary standards." Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting Hudson v. McMillian, 503 U.S. 1 (1992)).

The subjective component of an excessive force claim requires a showing that the force used was applied "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly, 456 F. App'x at 848 (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

"'When considering these factors, [the court] 'give[s] a wide range of deference to [jail] officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.' [The Court] examine[s] the facts as reasonably perceived by [Defendants and their subordinates] on the basis of the facts known to [them] at the time.'" Shuford v. Conway, 86 F. Supp. 3d 1344 (N.D. Ga. 2015) (quoting Fennell, 559 F.3d at 1217–

18) (alterations in original).  Despite this deference to allow the application of preventative measures intended to reduce the incidences of breaches of prison discipline, an officer violates the Eighth Amendment when he uses force not necessary to maintain order or discipline.  Skrtich v. Thornton, 280 F.3d 1295, 1301–02 (11th Cir. 2002).  The continued use of harmful force once the necessity for the use of force ceases, as well as any physical abuse directed at a prisoner after he ceases his resistance to authority, may violate the Eighth Amendment.  Williams v. Burton, 943 F.2d 1572, 1575–76 (11th Cir. 1991).

In their Motion to Dismiss, Defendants do not explain whether they are attacking the objective or subjective component of Plaintiff's excessive force claim.  However, they claim that Plaintiff only alleges a "*de minimis* use of physical force."  (Doc. 13-1, pp. 6–7.)  They also claim that Plaintiff fails to allege "a more than *de minimis* injury" or any use of force that was "repugnant to the conscience of mankind."  Id.  Defendants' arguments on this front misconstrue the very cases they cite, ignore binding precedent, and border on frivolity.

For instance, Defendants quote the case of Wilkins v. Gaddy, 559 U.S. 34, 38 (2010), for the proposition that "courts repeatedly have found that a use of force, such as a 'push or shove,' 'that causes no discernible injury almost certainly fails to state a valid excessive force claim.'" (Doc. 13-1, p. 6.)  This selective quotation ignores the holding in Wilkins.  In that case, the Supreme Court held that "the District Court erred in dismissing [the plaintiff's] complaint based on the supposedly *de minimis* nature of his injuries."  Wilkins, 559 U.S. at 39.  In so ruling, the Court rejected the Fourth Circuit's application of a non-*de minimis* injury test in Eighth Amendment excessive force cases.  The Court explained,

> According to the Fourth Circuit, Hudson "does not foreclose and indeed is consistent with [the] view . . . that, absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*."  [Norman v. Taylor, 25 F.3d [1259,] 1263 [(4th Cir. 1994)].

The Fourth Circuit's strained reading of <u>Hudson</u> is not defensible. This Court's decision did not, as the Fourth Circuit would have it, merely serve to lower the injury threshold for excessive force claims from "significant" to "non-*de minimis*"—whatever those ill-defined terms might mean. Instead, the Court aimed to shift the "core judicial inquiry" from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and "was applied . . . maliciously and sadistically to cause harm." [<u>Hudson</u>,] 503 U.S. at 7[ ]. To conclude, as the District Court did here, that the absence of "some arbitrary quantity of injury" requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry. <u>Id.</u> at 9[ ].

<u>Wilkins</u>, 559 U.S. at 39 (alterations in original). If Defendants' counsel had focused on this holding rather than the one phrase they cite from <u>Wilkins</u>, they likely would not have made the following argument:

[Plaintiff] fails to allege anything . . . that might conceivably support an inference that such pain constitutes the 'more than *de minimis*' injury required to state an excessive force claim. Without any allegations to suggest that he suffered a more than *de minimis injury*, [Plaintiff] fails to satisfy <u>Iqbal</u>'s requirement that plaintiffs plead facts that cross the line from possibility to plausibility of entitlement to relief.

(Doc. 13-1, p. 7.) Defendants' counsel should know better than to advance this non-*de minimis* injury standard six years after the Supreme Court explicitly rejected that standard in <u>Wilkins</u>. "While a lack of serious injury is relevant to the inquiry, '[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts." <u>Smith v. Sec'y, Dep't of Corr.</u>, 524 F. App'x 511, 513 (11th Cir. 2013) (quoting <u>Wilkins</u>, 559 U.S. at 38). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>Wilkins</u>, 559 U.S. at 38; <u>see also</u> <u>Stallworth v. Tyson</u>, 578 F. App'x 948, 953 (11th Cir. 2014) ("Although the extent of injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied, it is not solely determinative of an Eighth Amendment claim. . . . Instead, the focus of

the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted."); Thomas, 614 F.3d at 1304 ("in the excessive-force context, contemporary standards of decency may be violated even where no significant injury is evident.")

Turning to Plaintiff's claims, he makes sufficient allegations to satisfy the objective component of his excessive force claim against Shumake. Plaintiff alleges that Shumake sprayed Plaintiff's face, buttocks, and groin area with pepper spray, despite the fact that Plaintiff fully complied with Shumake's directives to strip naked, bend over, and spread his buttocks. (Doc. 1, p. 5.) Nearly six years ago, the Eleventh Circuit found that the use of pepper spray in such circumstances is sufficiently serious to establish the objective component of an Eighth Amendment claim. Thomas, 614 F.3d at 1310. In Thomas, the court explained that, while "it is well-established that the use of chemical agents on recalcitrant prisoners is not per se unconstitutional, there are constitutional boundaries to its use." 614 F.3d at 1310. The Eleventh Circuit cited its own precedent and law from other Circuits supporting the conclusion "that where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement." Id. (citing Danley v. Allen, 540 F.3d 1298, 1311 (11th Cir. 2008) (holding that prolonged exposure to pepper spray due to a failure to properly decontaminate an inmate may form the basis of an Eighth Amendment claim); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (use of additional bursts of pepper spray after inmate attempted to comply with officer's orders and which possibly contributed to inmate's asphyxiation and death sufficiently alleged objective component of excessive force claim); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984) ("[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of

pain.")).   Furthermore, the Eleventh Circuit has held that a correctional officer's spraying a prisoner with pepper spray without penological justification, "would be repugnant to the conscience of mankind" even if the prisoner did not suffer significant injury.  Stallworth v. Tyson, 578 F. App'x at 954 (overturning grant of summary judgment to correctional officer who sprayed plaintiff prisoner with pepper spray) (quoting Whitley, 475 U.S. at 327). [5]

As to the subjective component, Plaintiff plausibly alleges that Shumake sprayed him with pepper spray maliciously and sadistically for the purpose of causing Plaintiff harm and not out of any need to restore order or discipline in the prison.  Whitley, 475 U.S. at 320–21. Accepting Plaintiff's allegations as true, there was no need for Shumake to spray Plaintiff with pepper spray because Plaintiff had just complied with all of Shumake's directives.  Given that there was no need for force, the force Shumake used exceeded any need for its application.  The minimal injuries that Plaintiff suffered, while not dispositive, weigh against a finding that Shumake sprayed Plaintiff maliciously and sadistically.  On the other hand, under Plaintiff's version of events, he posed no threat of safety to the staff or other inmates.  He was standing naked in his locked cell which was surrounded by four correctional officers, and he obeyed every command the officers gave him.  Moreover, Plaintiff alleges that Defendants did not take any efforts to temper the severity of their forceful response, as they left him in his cell for several

---

[5]   Defendants do not cite Thomas, Stallworth, or any of the many other cases involving correctional officers spraying inmates with pepper spray and other chemical agents.  Rather, they focus on cases of minimal direct physical contact such as pushes and shoves and attempt to analogize the facts of those cases to Shumake's spraying Plaintiff with pepper spray.  (Doc. 13-1, pp. 6–7.)  Given the cases dealing directly with the use of force at hand, i.e., officers spraying inmates with chemical agents, the Court need not attempt this analytical stretch.

minutes and did not take him to the medical department or institute any other measures to reduce the effect of the pepper spray.[6]

In sum, Plaintiff alleges that Defendant Shumake sprayed him with pepper spray without any penological justification and for the sole purpose of causing Plaintiff harm. Given these allegations and the standard of review applicable at this stage, Defendants strain credibility by arguing that Plaintiff has failed to state a claim for excessive force against Shumake. Therefore, the Court should **DENY** this portion of Defendants' Motion.

### C. Whether Plaintiff States a Failure to Intervene Claim Against Defendant Sapp

Defendants base their argument for dismissal of Plaintiff's failure to intervene claims entirely on their argument for dismissal of his excessive force claims. They argue, "[i]f no excessive use of force takes place, an officer has no duty to intervene." (Doc. 13-1, p. 8.) In other words, Defendants' argument for dismissal of the failure to intervene claims rises or falls with their arguments as to the excessive force claims. As laid out above, Plaintiff has stated a plausible claim that Shumake used unconstitutional excessive force against him. Thus, Plaintiff's claim that Defendant Sapp failed to intervene in that use of force should proceed. See Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000). For these reasons, the Court should **DENY** this portion of Defendants' Motion.

## III. Whether Defendants are Entitled to Qualified Immunity

Defendants invoke the doctrine of qualified immunity in their Motion to Dismiss. (Doc. 13-1, pp. 12–13.) Qualified immunity shields "government officials performing

---

[6] The parties dispute whether Plaintiff showered off shortly after being sprayed. Plaintiff contends that, though Defendants locked him in the shower area outside his cell, they only did so to secure him while they searched his cell. (Doc. 23-1, p. 4.) He claims that he was handcuffed, Defendants never turned on the water, and the valves for the water were on the outside of the cell. Id. Thus, he says he was never allowed to shower off. Id. Of course, at this stage, the Court must accept Plaintiff's version of events.

discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation[.]" Id. at 1194. "Qualified immunity should be applied at the earliest possible stage of litigation, and it is therefore appropriate to decide its applicability on a motion to dismiss. Often however, this is not possible, and for this reason it is more typically addressed at summary judgment." Horn v. Jones, No. 14-20341-CIV, 2015 WL 3607012, at *6 (S.D. Fla. May 8, 2015); see also Marshall v. Fla. Dep't of Corr., No. 10–20101–cv, 2011 WL 1303213, at *4 (S.D. Fla. March 31, 2011) ("[W]here it is not evident from the allegations of the complaint alone that a defendant is entitled to qualified immunity, the case will proceed to the summary judgment stage, *the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation*.") (emphasis in original) (citation omitted).

To receive qualified immunity, Defendants must first establish that they were acting within their discretionary authority during the events in question. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n.17 (11th Cir. 1994). Once the government official has shown that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. Gonzalez v. Reno, 325 F.3d

1228, 1234 (11th Cir. 2003) (citing <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002)). Here, Defendants were acting within their respective discretionary duties as correctional officers when making decisions relevant to Plaintiff's claims.

Thus, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity. <u>Cottone</u>, 326 F.3d at 1358. To make this showing, Plaintiff must first establish the violation of a constitutional right on the facts alleged. <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001); <u>Gilmore v. Hodges</u>, 738 F.3d 266, 272 (11th Cir. 2013). As explained in Section II above, Plaintiff has alleged conduct by Shumake and Sapp that, if proven true, plausibly establishes a violation of Plaintiff's Eighth Amendment rights. Consequently, his Complaint satisfies the first qualified immunity prong.

Having alleged a constitutional violation, Plaintiff must demonstrate that the constitutional right was clearly established at the time of the alleged misconduct. <u>Saucier</u>, 533 U.S. at 200.[7] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 202; <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999). "The 'very action in question' does not have to have been previously held unlawful, but the unlawfulness of the conduct must be apparent in light of pre-existing law." <u>Harris v. Coweta Cty.</u>, 21 F.3d 388, 393 (11th Cir. 1994) (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). Defendants do not contest this second qualified immunity prong. Moreover, in the Eleventh Circuit, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court . . . . There is simply no

---

[7] The Supreme Court has clarified, however, that courts need not analyze these qualified immunity steps sequentially. <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

room for a qualified immunity defense when the plaintiff alleges such a violation." <u>Skrtich</u>, 280 F.3d at 1301 (citing <u>Johnson v. Breeden</u>, 280 F.3d 1308 (11th Cir. 2002)). Likewise, a reasonable correction officer would know that he violates an inmate's rights when he fails to intervene during a fellow officers' use of excessive force against the inmate. <u>See</u> <u>Priester</u>, 208 F.3d at 924 ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]" (alterations in original)) (citing <u>Ensley v. Soper</u>, 142 F.3d 1402, 1407–08 (11th Cir. 1998)).

The Court is not concluding today that Defendant Shumake indeed used unjustified force or that Sapp failed to intervene in any such unjustified use of force. On the record before the Court, we cannot know. However, if the Court accepts Plaintiff's factual allegations as true, as it must, then the actions that Defendants allegedly took were, "in the light of the preexisting law— beyond what the Constitution would allow under the circumstances." <u>Pourmoghani–Esfahani v. Gee</u>, 625 F.3d 1313, 1317 (11th Cir. 2010). For these reasons, the Court should refuse to grant Defendants qualified immunity and should **DENY** this portion of Defendants' Motion.

**IV.    Whether Plaintiff May Recover Punitive and Compensatory Damages Through this Lawsuit**

Defendants argue that the minimal nature of Plaintiff's alleged injuries prevents him from recovering punitive or compensatory damages. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002) (citing <u>Harris v. Garner</u>,

216 F.3d 970, 976–79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a de minim[i]s physical injury." (internal citations omitted) (alterations in original). Consequently, a prisoner that has not suffered more than de minimis physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA."), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011). "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312–13 (11th Cir. 2002). "The meaning of the phrase 'greater than de minimis,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009).

The Eleventh Circuit has held that courts should dismiss an inmate's punitive and compensatory damages claims under Section 1997e(e) without prejudice to allow an inmate to refile his claims when and if he is released. Harris v. Garner, 216 F.3d 970, 980 (11th Cir. 2004). Additionally, "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Williams, 347 F. App'x at 436 (quoting Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." Id. (quoting Smith v. Allen, 502 F.3d at 1271; see also Smith v. Barrow, No. CV 311-044, 2012 WL 6519541, at *5 (S.D. Ga. Nov. 9, 2012), *report and recommendation adopted*, No. CV 311-044, 2012 WL 6522020 (S.D. Ga. Dec. 13, 2012) ("Nominal damages are available for violations of the First Amendment.")).

In this case, Plaintiff alleges the typical effects associated with pepper spray. He alleges that his skin burned for twenty-four hours and that he had burning in his lungs and chest. Several courts have held that such conditions do not satisfy Section 1997e(e)'s physical injury requirement. See, e.g., Jennings v. Mitchell, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that prisoner who suffered the discomfort of pepper spray had shown only *de minimis* injury, insufficient to satisfy § 1997e(e)); Wilkerson v. Bryson, No. 6:16-CV-4, 2016 WL 796127, at *7 (S.D. Ga. Feb. 29, 2016), *report and recommendation adopted*, No. 6:16-CV-4, 2016 WL 1258959 (S.D. Ga. Mar. 28, 2016) (dismissal of compensatory and punitive damages claims based on injuries from pepper spray under Section 1997e(e)); Kirkland v. Everglades Corr. Inst., No. 12-22302-CIV, 2014 WL 1333212, at *6 (S.D. Fla. Mar. 31, 2014) ("If [plaintiff] experienced temporary chemical burns and minor respiratory problems from exposure to a chemical agent, he then sustained only minor, physical injuries from the chemical spray.");

Gardner v. Cty. of Baldwin, No. CIV.A. 12-0281-CG-C, 2014 WL 171839, at *13 (S.D. Ala. Jan. 15, 2014) ("[P]laintiff's injuries appear to be the typical physical response to being sprayed with pepper spray."); Thompson v. Quinn, No. 3:11cv533/RV/EMT, 2013 WL 2151715, at *12 (N.D. Fla. May 16, 2013) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where only allegation of physical injury was burning sensation on his body); Magwood v. Tucker, No. 3:12cv140/RV/CJK, 2012 WL 5944686, at *5 (N.D. Fla. Nov. 14, 2012) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where he alleged he suffered bloody nose and bloody phlegm); Robinson v. Tifft, No. 3:11cv560/LAC/CJK, 2012 WL 2675467, at *2 (N.D. Fla. June 1, 2012) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where he alleged he suffered "involuntary closing and burning sensation" in his eyes and was temporarily blinded); Kornagay v. Burt, No. 3:09cv281/LAC/EMT, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where prisoner alleged he suffered burning lungs and skin, congested breathing, tearing eyes, nasal discharge, dizziness, the sensation of respiratory distress, choking, and burns to his scalp); Beecher v. Jones, No. 3:08cv416/MCR/EMT, 2010 WL 5058555, at *5–6 (N.D. Fla. Oct. 29, 2010) (prisoner who alleged no physical injury arising from use of chemical agents failed to show requisite physical injury under § 1997e(e)); see also Quinlan v. Personal Trans. Servs. Co., 329 F. App'x 246, 249 (11th Cir. 2009) (unpublished) (pretrial detainee's complaints of a headache for several hours after being denied use of his asthma inhaler, difficulty breathing, temporary chest pain, and lingering back pain that caused him to walk hunched over, which resulted from him being transported in a smoked-filled van while handcuffed, were not greater

than *de minimis* and therefore did not provide the necessary physical injury to recover for mental and emotional injuries). In line with these cases, the injuries that Plaintiff suffered do not hurdle the PLRA's bar to compensatory and punitive damages.

Plaintiff has not alleged that he has suffered more than a *de minimis* physical injury due to Defendants' alleged constitutional violations. Accordingly, the Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's claims for compensatory and punitive damages **without prejudice** pursuant to 42 U.S.C. § 1997e(e). However, Section 1997e(e) does not bar Plaintiff's claims for nominal damages.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss. The Court should **DISMISS** all claims based on Defendants' actions following Defendant Shumake's use of force because Plaintiff failed to exhaust his administrative remedies as to those claims. Specifically, the Court should **DISMISS** Plaintiff's claims that Defendants were deliberately indifferent to Plaintiff's health and safety following the use of force. The Court should also **DISMISS WITHOUT PREJUDICE** Plaintiff's claims for compensatory and punitive damages. However, the Court should **DENY** Defendants' Motion to Dismiss as to Plaintiff's claims that Defendant Shumake used excessive force and that Defendant Sapp failed to intervene to prevent or stop that constitutional violation. Plaintiff should be allowed to pursue nominal damage on these claims.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 24th day of June, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA