**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

RONTRAVIOUS PORTER,

    Plaintiff,

v.

RONNIE SHUMAKE; and C.O. II SAPP,

    Defendants.

CIVIL ACTION NO.: 6:15-cv-113

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Georgia State Prison in Reidsville, Georgia ("GSP"), filed a 42 U.S.C. § 1983 action, alleging that Defendants violated his constitutional rights. (Doc. 1.) On March 14, 2017, Defendants filed a Motion for Summary Judgment. (Doc. 55.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendants filed a Motion for Summary Judgment and that he must file a response by April 4, 2017. (Docs. 56, 57.) That Notice further advised Plaintiff that:

    1.    If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.

    2.    If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.

    3.    If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.) Plaintiff filed no Response to Defendants' Motion for Summary Judgment, and the Court received no indication this Notice or Defendants' Motion was undeliverable.[1] However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Based on the reasons which follow, the Court should **GRANT** Defendants' unopposed Motion, **DISMISS** Plaintiff's Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case. In addition, the Court should **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## BACKGROUND

On October 28, 2013, two GSP officers, Dashay King and Calem Cambell, escorted Plaintiff from the shower back to his cell. (Doc. 55-2, p. 2.) After Plaintiff was returned to his cell, Plaintiff initiated a dispute with Ms. King regarding the return of his personal property. Plaintiff wanted Ms. King to bring the officer in charge ("OIC") to his cell so he could ask about his property. However, Ms. King notified Plaintiff that she would not do so. (Id.)

At this point, an inmate adjacent to Plaintiff's cell asked Ms. King—who was distributing breakfast trays—to give him Plaintiff's tray. Ms. King did so, and after Plaintiff expressed his displeasure, Ms. King reiterated that she was not going to summon the OIC. (Id.) Ms. King then twice instructed Plaintiff to remove his arm from the tray flap of his cell door. (Id. at p. 3.) Plaintiff refused and threw "a liquid substance smelling of urine and feces" at Ms. King from

---

[1] In fact, Plaintiff has not filed anything in this case since March 6, 2017. (Docs. 50–53.)

inside his cell. (Id. at p. 6; Doc. 55-11, p. 3.) Plaintiff then informed Ms. King that she would now be forced to summon the OIC. (Id. at p. 3.)

Because Ms. King had been struck by fluids in the face and upper torso, she left the floor to get decontaminated. Plaintiff then told Defendant Sapp, another officer on the scene, that "he wanted his property and was 'ready to go on strip cell.'" (Id.) Defendant Sapp notified Plaintiff that he was leaving to contact Defendant Shuemake, the OIC that day. (Id. at p. 4.) Shortly thereafter, Defendant Sapp returned with Defendant Shuemake and several other officers. Defendant Shuemake instructed Plaintiff to strip his clothing so that he could be taken to the medical unit. At some point following this instruction, Defendant Shuemake deployed a burst of pepper spray into Plaintiff's cell. Defendants then proceeded to escort Plaintiff to the medical unit for an examination. (Id.)

Nurse Ana Morales evaluated Plaintiff after the event and determined that he was medically clear and uninjured. Furthermore, during the examination, Plaintiff admitted to Nurse Morales that he was "not hurt" and that "the only thing that's going on with [him]" was burning in the testicles and buttocks. (Id.) (citations omitted). Nurse Morales completed a use of force assessment indicating that Plaintiff was uninjured by the incident and did not request or require any follow-up treatment. (Id.)

**STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury

3

question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

Defendants assert in their Motion that: 1) Plaintiff cannot sustain his Eighth Amendment claims; 2) the Prison Litigation Reform Act bars Plaintiff's monetary damages claims because he did not suffer more than a *de minimis* injury as a result of Defendants' actions; and 3) Defendants are entitled to qualified immunity. (Doc. 55-1, pp. 8–20.) In moving for summary judgment, Defendants rely on: a Statement of Material Facts; affidavits; Plaintiff's medical reports; a copy of the incident report; a copy of the transcript from Plaintiff's deposition;

Defendants' objections and response to Plaintiff's interrogatories; Georgia Department of Corrections' policy and procedures; and Plaintiff's disciplinary reports.

As set forth below, Plaintiff fails to establish a genuine dispute as to his claims, and the Court should **GRANT** Defendants' Motion as a result.

I.  **Plaintiff's Use of Force Claim**

Plaintiff's excessive use of force claim and Defendants' Motion require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That proscription governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Through their supporting materials, Defendants show the following in light of the factors the Court is to consider when analyzing whether an Eighth Amendment use of force was done wantonly and unnecessarily to cause harm.

### A. The Need for the Exercise of Force

Based upon the undisputed facts before the Court, there appears to have been a need for Defendant Shuemake's exercise of force. In this case, Plaintiff impermissibly had his arm outside his cell door and had thrown bodily fluids at Ms. King. (Doc. 55-11, pp. 3, 6.) Furthermore, Plaintiff refused two direct commands from Ms. King to remove his arm from the tray flap. (Doc. 55-11, pp. 2, 9.)

Defendants further state that Plaintiff failed to follow Defendant Shuemake's direct command to strip. (Doc. 55-4, p. 4; Doc. 55-6, p. 4.) While Plaintiff alleges in his Complaint that Defendant Shuemake had sprayed pepper spray on him without any provocation, he provides no materials to support his account, and he provides no response to Defendants' account.

Based on Plaintiff's disciplinary history, (doc. 55-12), and his actions immediately surrounding this incident, Defendant Shuemake needed to use some measure of force against Plaintiff in an effort to secure his person and obtain Plaintiff's compliance—particularly in the face of Plaintiff's repeated obstructive behavior. Thus, this factor weighs in Defendant Shuemake's favor. Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at *6 (S.D. Ga. Mar. 31, 2014) (noting that plaintiff failed to follow officer's lawful commands and that an "official need not wait until disturbances are dangerous before using force to restore order.") (citing Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) ("The need for the use of force is established by the undisputed evidence that [Plaintiff] created a disturbance.").

### B. The Relationship Between the Need for the use of Force and the Amount Applied

Defendant Shuemake used an appropriate amount of force given that Plaintiff continuously refused to follow orders, had previously projected bodily fluids onto another officer, and had a known history of projecting bodily fluids at officers. (Doc. 55-11, pp. 3, 6; Doc. 55-12.) Given the legitimate concern of maintaining prison security and order, Defendant Shuemake's use of pepper spray was warranted. Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002) (use of pepper spray reasonable where plaintiff was refusing police requests); Pearson v. Taylor, 665 F. App'x 858, 864 (11th Cir. 2016) ("A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." (citing Danley v. Allen, 540 F.3d 1298, 1307–08 (11th Cir. 2008), *overruled on other grounds, as recognized by* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010)) Given the above reasons, this factor also weighs in Defendants' favor, particularly because the Court gives greater "deference to prison officials acting to preserve discipline and security, especially when they make decisions at the scene of a disturbance." Williams v. Slack, 438 F. App'x 848, 851 (11th Cir. 2011).

### C. The Extent of Plaintiff's Injuries

The extent of Plaintiff's injury also weighs in favor of summary judgment. The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). However, while the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant Shuemake, not the severity of the injury that resulted to Plaintiff. Id. at 800–01 (citing Wilkins, 559 U.S. at 37). Injury and force are "imperfectly

correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

In the case at hand, Plaintiff's injuries were minimal. Plaintiff's objective medical documentation indicates that, during the use of force examination, he complained only of a burning sensation and reddened eyes. (Doc. 55-9, p. 4; Doc. 55-10, pp. 9–10.) Plaintiff did not complain of any breathing difficulties. (Id.) No treatment was prescribed at the time and no follow-up was needed. (Doc. 55-10, pp. 9–10.)

While injury and the amount of force are imperfectly correlated, here, the indisputably minimal injuries that Plaintiff suffered reveal that Defendant Shuemake only applied minimal force. These injuries are so insignificant that they weigh against the jury finding for Plaintiff on the "core judicial inquiry" of whether "the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins, 559 U.S. at 39 (ellipsis in original) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

### D. Extent of Threat to the Safety of Staff and Other Inmates

Defendant Shuemake acted to maintain security and discipline when he used force. Plaintiff had a reputation for creating disturbances, and in particular, for throwing bodily fluids outside of his cell. Defendant Shuemake was attempting to strip Plaintiff and restore prison order after Plaintiff purposely threw bodily fluids at another officer and refused several direct commands. Thus, this factor also goes to Defendants' favor.

### E. Any Efforts Taken to Temper the Severity of the Forceful Response

Given Plaintiff's injuries resulting from Defendant Shuemake's use of force, little effort was needed to mitigate the effects of the force. However, Plaintiff was showered off less than

ten minutes after being sprayed with pepper spray and was transported to the medical unit shortly thereafter. (Doc. 55-3, pp. 48–49.) Taking into consideration the low severity of Plaintiff's injury and the medical care provided, the evidence reveals no impropriety and, therefore, this factor also falls in Defendants' favor. Alday, 2014 WL 1320093, at *7.

All of the five factors discussed above weigh in Defendants' favor. Consequently, the Court should **GRANT** this portion of Defendants' Motion for Summary Judgment.

## II.     Plaintiff's Failure to Intervene Claim

As shown above Plaintiff fails to state an excessive force claim. Therefore, Plaintiff cannot support his failure to intervene claim against Defendant Sapp. See Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000) (defendant's liability when he did not participate in use of excessive force arises only from his failure to intervene); see also Ensley v. Soper, 142 F.3d, 1407–08 (11th Cir. 1998) ("officer is directly liable" if he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence[.]") Here, there was no "constitutional violation" for which Defendant Sapp was obligated to provide intervention. Thus, the Court should also **GRANT** this portion of Defendants' Motion for Summary Judgment.

## III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[2] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action . . . may proceed on appeal *in*

---

[2] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

9

*forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion for Summary Judgment, the Court should **DENY** Plaintiff's potential *in forma pauperis* status on appeal, as there are no non-frivolous issues to raise, and any appeal would not be taken in good faith.

## CONCLUSION

For the above stated reasons, I **RECOMMEND** that the Court **GRANT** Defendants' unopposed Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and

Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of May, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA